UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

ROSE ALEXANDER                                          PLAINTIFF

VS.                           CIVIL ACTION NO. 1:04CV701TSL-MTP

WYETH; WYETH PHARMACEUTICALS INC.                       DEFENDANTS

MEMORANDUM OPINION AND ORDER

Defendants Wyeth and Wyeth Pharmaceuticals Inc. (collectively Wyeth) have moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment on the basis of the statute of limitations. Plaintiff Rose Alexander has responded in opposition to the motion and the court, having considered the memoranda of authorities, together with attachments, submitted by the parties, concludes that the motion should be denied.

Plaintiff Rose Alexander alleges that from 1991 until April 1996, she took Premarin, a hormone replacement therapy (HRT) drug manufactured by defendant Wyeth, to relieve menopausal symptoms. On June 11, 1999, Ms. Alexander was diagnosed with breast cancer.[1] On July 9, 2004, more than five years after her breast cancer diagnosis, she filed the present lawsuit alleging her breast cancer was caused by Premarin.[2] Ms. Alexander has asserted

_____

[1]   Ms. Alexander had a successful surgery for the cancer, followed by radiation therapy and chemotherapy.  She has remained free of breast cancer since her treatment.

[2]   Premarin is a prescription product containing conjugated equine estrogen intended to replace the estrogen naturally decreasing in women during menopause and reduce the associated

products liability claims (including negligence and strict
liability), and claims for breach of express warranty and
negligent and fraudulent misrepresentations, all based, in
general, on allegations that Wyeth knew or should/could have known
that Premarin caused breast cancer and yet failed to adequately
warn about, and/or misrepresented and/or concealed the known or
knowable risk of breast cancer from ingestion of Premarin, which
proximately caused plaintiff's breast cancer.  Wyeth has moved for
summary judgment, contending plaintiff's claims are barred by the
three-year statute of limitations in Mississippi Code Annotated
§ 15-1-49.[3]

     The parties agree that the applicable statute of limitations
for all of the claims asserted by plaintiff is the general three-
year statute of limitations set forth in Mississippi Code
Annotated § 15-1-49.  See § 15-1-49(1) ("All actions for which no
other period of limitation is prescribed shall be commenced within
three (3) years next after the cause of such action accrued, and

---

symptoms.  In re Prempro Products Liability Litigation, 586 F.3d
547, 554 (8th Cir. 2009).

     [3]     This case was originally filed in state court and was
removed on the basis of diversity jurisdiction.  Soon after
removal, it was transferred to the Multi-District Litigation (MDL)
Docket No. 1507: In re Prempro Products Liability Litigation (In
re Prempro) before District Judge William R. Wilson, Jr. of the
Eastern District of Arkansas.  The case remained pending in the
MDL until March 9, 2012, when it was remanded to this court.
Wyeth filed its motion for summary judgment motion promptly after
remand from the MDL court.

not after.").  Their dispute – or their first dispute – centers on

*when* the limitations period commenced.  Section 15-1-49(2)

establishes a latent injury discovery rule, stating,

> (2) In actions for which no other period of limitation
> is prescribed and which involve latent injury or
> disease, the cause of action does not accrue until the
> plaintiff has discovered, or by reasonable diligence
> should have discovered, the injury.

Miss. Code Ann. § 15-1-49(2).  There is no dispute that this rule

applies in this case.  However, whereas Wyeth argues that all of

plaintiff's claims accrued on the date of diagnosis of her breast

cancer since that is the date on which she discovered "the

injury," plaintiff insists that she did not discover "the injury"

until at the earliest, July 2002, when published reports of the

results of a Women's Health Initiative (WHI) study first linked

HRT drugs to breast cancer.[4]  Plaintiff submits it was then that

she first knew or should (or could) have known that there was a

causal link between Premarin and breast cancer and thus that this

is the first date on which she knew or should have known that she

had a "legally recognizable injury."

---

[4]     In July 2002, the National Institutes of Health
published the results of its Women's Health Initiative (WHI)
study, linking the use of hormone replacement therapy to breast
cancer.  In re Prempro Products Liability Litigation, 586 F.3d
547, 554 (8th Cir. 2009).  Plaintiff alleges that Wyeth knew or
should have known of the link between Premarin and breast cancer
prior to publication of the WHI study results and yet concealed
this information and misrepresented that Premarin was safe and
effective not only for treatment of menopausal symptoms but for
other uses as well.

The argument that a cause of action involving a latent injury does not accrue under § 15-1-49(2) until the would-be plaintiff discovers or reasonably should have discovered both the injury and the cause of her injury has been repeatedly rejected by the Mississippi Supreme Court, and by the Fifth Circuit and this court applying the Mississippi Supreme Court's interpretation of the statute.  <u>See</u> <u>Angle v. Koppers, Inc.</u>, 42 So. 3d 1, 3 (Miss. 2010) (holding that a cause of action for recovery on account of latent disease or injury "accrues upon discovery of the injury, not discovery of the injury and its cause"); <u>Lincoln Electric Co. v. McLemore</u>, 54 So. 3d 833 (Miss. 2010) (holding that "...Section 15-1-49 does not require a plaintiff to know the cause of the injury before accrual of the cause of action[,]" and thus "...knowledge of the cause of an injury is irrelevant to the analysis [under §15-1-49(2)"); <u>Owens-Illinois, Inc. v. Edwards</u>, 573 So. 2d 704, 709 (Miss. 1990) (stating that "[t]he cause of action accrues and the limitations period begins to run when the plaintiff can reasonably be held to have knowledge of the injury or disease....  Though the cause of the injury and the causative relationship between the injury and the injurious act or product may also be ascertainable on this date, these facts are not applicable under § 15-1-49(2)..."); <u>Barnes v. Koppers, Inc.</u>, 534 F.3d 357 (5th Cir. 2008) (stating that "[u]nder § 15-1-49, a cause of action accrues when the plaintiff has knowledge of the injury,

not knowledge of the injury and its cause."); Bryant v. Wyeth, 816
F. Supp. 2d 329, 334 (S.D. Miss. 2011), aff'd, 2012 WL 3854550, 1
(5th Cir. Sept. 5, 2012) (holding that under § 15-1-49(2), a cause
of action accrues "when the plaintiff has knowledge of the injury,
not knowledge of the injury and its cause"); Hewitt v. Wyeth, No.
5:03CV333TSL-MTP (S.D. Miss. July 7, 2011) (same).  In fact, just
like this case, Bryant and Hewitt involved claims against Wyeth
based on allegations that its HRT product(s) caused the
plaintiffs' breast cancers.  This court concluded that under
§ 15-1-49(2), the plaintiffs' claims for recovery based on the
allegation that their cancers were caused by Wyeth-manufactured
HRT medications were time-barred since the plaintiffs filed their
lawsuits more than three years after their respective diagnoses
with breast cancer, notwithstanding allegations that they neither
knew nor (according to their allegations) reasonably should (or
could) have known that the Wyeth HRT drugs they had taken had
caused their cancers.  For the reasons set forth in Bryant and
Hewitt, and in all of the cited authorities, the court rejects
plaintiff's argument herein that her claims accrued not when she
learned that she had breast cancer but rather later, in July 2002,
when she claims she first learned, or reasonably could have
learned of the causal link between Premarin and breast cancer.

The court thus concludes that all of plaintiff's claims
accrued on June 11, 1999, when she was diagnosed with breast

cancer.[5]  Plaintiff did not bring her claims within three years of
the date of her diagnosis.  Nevertheless, she submits that her
claims are timely because Wyeth's fraudulent concealment tolled
the running of the limitations period.  Mississippi Code Annotated
§ 15-1-67 provides tolling for fraudulent concealment:

---

[5]    Plaintiff submits that even if her other claims are held
to have accrued when she was diagnosed with breast cancer, her
"fraud-based claims" did not accrue until, at the earliest, in
July 2002, upon publication of the WHI study results, since that
is the first time she knew, or could have known, of the link
between HRT drugs and breast cancer.  However, the court is not
persuaded that a different accrual rule applies to her fraud
claims.
    The Mississippi Supreme Court has consistently held that a
cause of action accrues, and the statute of limitations "begins to
run when all the elements of a tort, or cause of action, are
present." Weathers v. Metro. Life Ins. Co., 14 So. 3d 688, 692
(Miss. 2009) (quoting Caves v. Yarbrough, 991 So. 2d 142, 147
(Miss. 2008)).  This is consistent with the Mississippi Supreme
Court's more specific holding that a cause of action for fraud
accrues "upon the completion of the sale induced by such false
representation, or upon the consummation of the fraud." Dunn v.
Dent, 169 Miss. 574, 153 So. 798 (1934).  The elements of a cause
of action for fraud are "(1) a representation, (2) its falsity,
(3) its materiality, (4) the speaker's knowledge of its falsity or
ignorance of its truth, (5) his intent that it should be acted on
by the hearer and in the manner reasonably contemplated, (6) the
hearer's ignorance of its falsity, (7) his reliance on its truth;
(8) his right to rely thereon, and (9) his consequent and
proximate injury." Trim v. Trim, 33 So. 3d 471, 478 (Miss. 2010)
(citation omitted).  Once plaintiff developed breast cancer, all
of the elements of her fraud claim were present.  However, as hers
was a latent injury, her cause of action was subject to the latent
injury discovery rule of § 15-1-49(2), pursuant to which her cause
of action did not accrue until she discovered the injury, i.e.,
upon her breast cancer diagnosis.  There is no statutory authority
for application of a fraud discovery rule or for excepting fraud
claims from the latent injury discovery rule of § 15-1-49(2).  The
single case plaintiff cites for a different fraud accrual rule
plainly does not support her suggestion that fraud claims are
subject to a discovery rule (other than the latent injury
discovery rule when the fraud results in a latent injury).

> If a person liable to any personal action shall
> fraudulently conceal the cause of action from the
> knowledge of the person entitled thereto, the cause of
> action shall be deemed to have first accrued at, and not
> before, the time at which such fraud shall be, or with
> reasonable diligence might have been, first known or
> discovered.

Miss. Code Ann. § 15-1-67.  "To establish fraudulent concealment,

plaintiff must demonstrate (1) that defendants acted affirmatively

to conceal the fraud; and (2) that plaintiffs could not have

discovered the alleged fraud with the exercise of due diligence."

Liddell v. First Family Financial Services, Inc., 146 Fed. Appx.

748, 750, 2005 WL 2044555, 1 (5th Cir. 2005) (quoting Stephens v.

Equitable Life Assurance Soc'y, 850 So. 2d 78, 82 (Miss. 2003)).

Plaintiff submits that fraudulent concealment tolling applies in

this case because Wyeth undertook affirmative acts (both preceding

and following her breast cancer diagnosis) to conceal from

plaintiff and her physicians that HRT drugs, including Premarin,

can cause breast cancer, and because she did not and could not

have discovered that Premarin caused her breast cancer until the

results of the Women's Health Initiative study were published in

July 2002 reporting an increased risk of breast cancer from HRT

drugs.

Addressing the first element of proof, this court in Bryant

explained as follows:

> The requirement of proof of an affirmative act refers
> not to proof of the act that gives rise to the claim but
> rather to a *subsequent* affirmative act of concealment.
> See Liddell v. First Family Financial Servs., Inc., 146

> Fed. Appx. 748, 751, 2005 WL 2044555, 2 (5th Cir. 2005)
> (highlighting that part of Mississippi fraudulent
> concealment doctrine requiring that affirmative acts of
> concealment must occur "after the transactions at
> issue"); <u>Ross v. Citifinancial, Inc.</u>, 344 F.3d 458, 464
> (5th Cir. 2003) ("Mississippi law is unambiguous:
> Plaintiffs must prove a subsequent affirmative act of
> fraudulent concealment to toll the limitations.").

<u>Bryant</u>, 816 F. Supp. 2d at 335.  Thus, as Wyeth correctly points

out, plaintiff cannot sustain her burden to prove fraudulent

concealment with proof of alleged acts of alleged concealment that

occurred prior to her diagnosis with breast cancer.  So, while

plaintiff purports to have presented evidence demonstrating such

prior affirmative acts of concealment, this evidence is immaterial

in the fraudulent concealment inquiry.

However, plaintiff has also offered evidence of what she

submits are subsequent affirmative acts of concealment by Wyeth

which prevented her from discovering her claims, including

disseminating "Dear Doctor" letters to physicians in 2000 which

she contends fraudulently and deliberately misled physicians about

the level of breast cancer risk from HRT drugs and fraudulently

represented that the drugs had unproven and off-label heart

benefits, and "ghostwriting" numerous medical articles which

downplayed the breast cancer risk and encouraged use of HRT

medications for unproven heart and brain benefits.[6]  Wyeth

_____

[6]     Wyeth purports to interpret plaintiff's response as
asserting fraudulent concealment as a basis for tolling the
statute of limitations only as to her fraud and misrepresentation
claims, noting, as it does, that "Ms. Alexander has not argued her
negligence/strict products liability claims were fraudulently

responds that these purported acts of concealment cannot be a
basis for finding fraudulent concealment to toll the statute of
limitations since these same alleged acts of concealment are part
of the basis for plaintiff's fraud claim.  However, as Wyeth has
argued, and as the court has concluded <u>supra</u>, plaintiff's cause of
action for fraud accrued at the time she was diagnosed with breast
cancer.  That is the date on which she suffered consequent and
proximate injury from Wyeth's alleged fraud.  Acts of concealment
which post-dated her injury are not a basis of her fraud cause of
action but rather of her assertion of fraudulent concealment as a
basis for tolling the statute of limitation.  Contrary to Wyeth's
urging, that fact distinguishes this case from <u>Bryant</u>.  In <u>Bryant</u>,
the plaintiff alleged that Wyeth's labeling/package insert "does
nothing to illuminate the problems of combined estrogen and
progestin hormone therapy, even though Wyeth had known for well
over a decade that physicians had been prescribing the two
strictly in combination for women with intact uteri." <u>Bryant</u>, 816
F. Supp. 2d 335-36.  The plaintiff thus concluded that Wyeth had

---

concealed, nor could she prove it in light of the clear law ...
regarding accrual of those types of causes of actions."
     The court acknowledges that plaintiff's memorandum is
somewhat murky on this point; but ultimately, it seems reasonably
clear that plaintiff is asserting that Wyeth's fraudulent
concealment tolled the statute of limitations as to all her
claims, not just as to her fraud-based claims.  Further, the court
fails to perceive the basis of Wyeth's assertion that plaintiff is
somehow less able to establish fraudulent concealment relative to
her products liability claims than she is relative to her fraud-
based claims.

"concealed the true risks of breast cancer from the entire medical and scientific community, and they were certainly concealed from a layman like Mrs. Bryant." <u>Id</u>. at 336.  The court found that "[i]nadequacies in Wyeth's labeling which ultimately form the basis of plaintiff's claims for relief do not constitute subsequent affirmative acts of concealment." <u>Id</u>.  The court specifically noted that Mrs. Bryant "ha[d] not identified any subsequent affirmative act(s) of concealment as required by § 15-1-67." <u>Id</u>. at 336, n.5.

In support of her claim of fraudulent concealment in this cause, plaintiff herein, in contrast to Mrs. Bryant, has not alleged merely that the product drug labeling was inadequate or deceptive or fraudulent; she has alleged that after she was diagnosed with breast cancer, Wyeth undertook actions specifically designed to conceal known (and/or reasonably knowable) risks of breast cancer from the use of HRT drugs, so that plaintiff was unable to discover her causes of action herein.  In the court's opinion, her evidence is sufficient to create an issue for trial on the first element of fraudulent concealment.

As for the second element of proof on her assertion of fraudulent concealment by Wyeth, Wyeth contends plaintiff cannot obtain the benefit of tolling through fraudulent concealment because she cannot show that she was diligent in trying to discover her substantive claims.  More particularly, it contends

10

that plaintiff cannot be found to have been diligent because she did not do anything at all to attempt to discover her claims prior to the announcement of the WHI study results.  In response, plaintiff points out that in fact, following her surgery, she did research into the causes of breast cancer but not until she read in the newspaper in 2002 about the results of the WHI study did she associate hormone therapy with breast cancer.

The Mississippi Supreme Court has held that "a plaintiff cannot satisfy the due diligence requirement *if he had information regarding the claim and failed to take action* before the statute of limitations expired."  Trustmark Nat. Bank v. Meador, 81 So. 3d 1112, 1120 (Miss. 2012) (emphasis added) (citing Andrus v. Ellis, 887 So. 2d 175, 181 (Miss. 2004)).  "The proper test is 'whether a reasonable person similarly situated would have discovered potential claims.'"  Whitaker v. Limeco Corp., 32 So. 3d 429, 436 (Miss. 2010) (quoting Andrus, 887 So. 2d at 180).  See also Andrus, 887 So. 2d at 181 (observing that once informed she had no health insurance, diligence required that plaintiff either "object or inquire as to why her understanding of the insurance contract fundamentally differs from Commercial Credit's understanding").  In the related context of the discovery rule, the court in Sundbeck v. Sundbeck, No. 1:10CV23-A-D, 2011 WL 5006430 (N.D. Miss. Oct. 20, 2011), described reasonable diligence as requiring

11

investigation when one has notice, or should have notice that she

may have a claim and that inquiry is therefore warranted.

> The intent of the discovery rule is to protect potential
> plaintiffs who cannot, through reasonable diligence,
> discover injuries done to them. <u>Wayne General Hosp. v.
> Hayes</u>, 868 So. 2d 997, 1001 (Miss. 2004). Mississippi
> courts have consistently held that a plaintiff seeking
> to avail himself of the tolling provided by the
> discovery rule must show that he "exercise[d] reasonable
> diligence in determining whether an injury suffered is
> actionable." <u>See</u>, <u>e.g.</u>, <u>Blailock ex rel. Blailock v.
> Hubbs</u>, 2005 WL 1385214, at *2 (Miss. 2005); <u>Wright v.
> Quesnel</u>, 876 So. 2d 362, 366 (Miss. 2004) ("But to
> benefit from the discovery rule, a plaintiff must be
> reasonably diligent in investigating her injuries.");
> <u>Punzo v. Jackson County</u>, 861 So. 2d 340, 349 (Miss.
> 2003) ("To claim benefit of the discovery rule, a
> plaintiff must be reasonably diligent in investigating
> the circumstances surrounding the injury."). 
> Elaborating on this requirement of reasonable diligence,
> the Fifth Circuit in <u>First Trust National Association v.
> First National Bank of Commerce</u>, stated:

>> The would-be plaintiff need not have become
>> absolutely certain that he had a cause of
>> action; he need merely be on notice-or should
>> be-that he should carefully investigate the
>> materials that suggest that a cause probably
>> or potentially exists. Neither need the
>> plaintiff know with precision each detail of
>> breach, causation, and damages, but merely
>> enough to make a plain statement of the case
>> backed by evidence sufficient to survive a
>> summary judgment motion.

>> The [Mississippi Supreme Court] [has]
>> explained that

>> The plaintiffs need not have actual knowledge of
>> the facts before the duty of due diligence arises;
>> rather, knowledge of certain facts which are
>> "calculated to excite inquiry" give rise to the
>> duty to inquire. The statute of limitations begins
>> to run once plaintiffs are on inquiry that a
>> potential claim exists.

220 F.3d 331, 337 (5th Cir. 2000)(citing <u>Smith v. Sanders</u>, 485 So. 2d 1051, 1052 (Miss. 1986)).

<u>Sundbeck</u>, 2011 WL 5006430, at 5.

In <u>Simon v. Wyeth Pharmaceuticals, Inc.</u>, 989 A.2d 356 (Pa. Super. Ct. 2009), the Pennsylvania Superior Court discussed the reasonable diligence component of that state's discovery rule in the context of an HRT case against Wyeth, stating:

> If the injured party could not ascertain when he was injured and by what cause within the limitations period, "despite the exercise of reasonable diligence," then the discovery rule is appropriate. <u>Pocono International Raceway, Inc. v. Pocono Produce, Inc.</u>, 503 Pa. 80, 468 A.2d 468, 471 (1983). The test is objective but takes into account individual capacities and society's expectations of "attention, knowledge intelligence and judgment" for citizens to protect their own interests. [<u>Fine v. Checcio, D.D.S.</u>, 582 Pa. 253, 870 A.2d 850, 858 (2005)]. The party who invokes the discovery rule has the burden of proving its applicability by establishing he acted with reasonable diligence in determining the fact and cause of his injury but was unable to ascertain it. <u>Weik v. Estate of Brown</u>, 794 A.2d 907, 909 (Pa. Super. 2005) (citing <u>Fine</u>, supra at 858).
>
> This determination is a factual one as to whether the party, despite the exercise of reasonable diligence, was unaware of his injury and unable to determine its cause. <u>Id.</u> Where the rule's application involves a factual determination regarding whether the plaintiff exercised due diligence in discovering his injury, the jury must decide whether the rule applies. <u>Crouse v. Cyclops Industries</u>, 560 Pa. 394, 745 A.2d 606 (2000).

989 A.2d at 365-66. The court in <u>Simon</u> concluded there was sufficient evidence for the jury to find that until the WHI study was published in July 2002, the plaintiff had no reason to suspect a link between her use of HRT and breast cancer, and thus implicitly, that there was sufficient evidence to support a

13

finding that in making no investigation, she exercised reasonable diligence under the circumstances.  <u>Id</u>. at 366.  The court elaborated on these principles in <u>Coleman v. Wyeth Pharmaceuticals, Inc.</u>, 6 A.3d 502 (Pa. Super. Ct. 2010), stating,

> [A]t some point, a plaintiff should become sufficiently aware of his injury and that it was caused by another to trigger or "awaken inquiry." <u>Hayward v. Medical Center of Beaver County</u>, 530 Pa. 320, 608 A.2d 1040, 1043 (1992).  Knowledge of an injury alone is not sufficient to trigger such inquiry.  One must have some reason to suspect that the injury was caused by a third party to impose a duty to investigate further.  Where the injury is one that may result from nontortious conduct, such as a disease, that point may be difficult to discern without resolving factual issues.  Subjective differences among persons and the situations in which they find themselves are relevant in making that determination.

6 A.3d at 510-11.

In the case at bar, there is evidence that plaintiff did make at least some effort to determine the cause of her breast cancer.  However, even had she not done so, that would not necessarily foreclose her reliance on fraudulent concealment as a basis for tolling the limitations period.  The proper inquiry is not merely whether the plaintiff investigated to determine whether she had a potential claim against a third party once she was diagnosed with breast cancer, but rather whether what steps, if any, a reasonable person in her position would have taken to investigate.  <u>See</u> <u>Whitaker</u>, 32 So. 3d at 436; <u>Andrus</u>, 887 So. 2d at 180.  If she had information regarding a potential claim and yet failed to take action before the statute of limitations expired, she could not

14

establish that she acted with reasonable diligence; but nothing
suggests that she had any such information.  In the court's
opinion, under the circumstances of this case, a genuine issue of
material fact exists on the issue of the diligence component of
the plaintiff's fraudulent concealment defense to the statute of
limitations.

Based on all of the foregoing, the court concludes that
genuine issues of material fact preclude a determination as a
matter of law that the limitations period had expired on her
claims against Wyeth before plaintiff filed suit.  Accordingly, it
is ordered that ordered that Wyeth's motion for summary judgment
is denied.

SO ORDERED this 11th day of October, 2012.


/s/ Tom S. Lee
UNITED STATES DISTRICT JUDGE